**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BILLY GOAT IP LLC,

    Plaintiff,

             v.

THE BILLY GOAT CHIP COMPANY LLC,

    Defendant.

No.   17-cv-9154

**JURY TRIAL DEMANDED**

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Billy Goat IP LLC states as follows for its Complaint against Defendant The Billy Goat Chip Company, LLC:

<u>Introduction</u>

1. No fries…Chips! Since 1934 customers from around the world have been visiting Plaintiff's famous Billy Goat Tavern in Chicago for its unique hospitality, mouth-watering burgers, thirst-quenching beers, and delicious potato chips. With the help of the 1978 Saturday Night Live sketch starring John Belushi, Bill Murray and Dan Aykroyd, Plaintiff's company (including predecessor and affiliates) has become notorious and world-renowned for three iconic phrases: (i) "Cheezborger, Cheezborger, Cheezborger!; (ii) No Pepsi…Coke!; and, of course, (iii) No fries…CHEEPS!  Since then, Plaintiff has promoted its restaurant services, including, but not limited to the sale of potato chips, in connection with its BILLY GOAT trademark (hereinafter "BILLY GOAT Mark").



1

2.   Defendant's recent entrance into the Chicago, Illinois and Washington D.C. markets—selling potato chips and other related products under the trademark THE BILLY GOAT CHIP COMPANY—has resulted in a growing number of instances of consumer confusion as to whether Defendant is affiliated, sponsored, or approved of by Plaintiff, which it is not. For example, numerous customers have come to Plaintiff's locations mistakenly stating that they had purchased Plaintiff's chips at various retail locations, when in reality they had purchased Defendant's chips.

3.   Defendant's use of the name "Billy Goat" as a trademark infringes upon Plaintiff's well-established BILLY GOAT Mark and presents a significant threat to the public's interest in not being confused when making purchasing decisions.  Therefore, in this action, Plaintiff seeks injunctive relief against Defendant's use of the name "Billy Goat" for its chips.

**Parties**

4.   Plaintiff is Delaware limited liability company with its principle place of business located at 1535 West Madison Street, Chicago, Illinois 60611.

5.   Defendant is a Missouri limited liability company with its principle place of business located at 3136 Watson Road, St. Louis, Missouri 63139.

**Jurisdiction and Venue**

6.   This Court has original subject matter jurisdiction over Counts I and II of this action under 28 U.S.C. §§ 1331 and 1338 because the claims arise out of the Lanham Act under 15 U.S.C. §§ 1114 and 1125. This Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the claims asserted in Counts I and II as to form part of the same case or controversy.

7.   This Court has personal jurisdiction over Defendant because it sells its products under the infringing THE BILLY GOAT CHIP COMPANY mark throughout the State of Illinois and in the city of Chicago, as shown on Defendant's own website:



8.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this district and a substantial part of the events giving rise to the claims (*i.e.,* Defendant's trademark infringement) occurred in this district.

**Factual Background**

**I.   History of the Iconic Billy Goat Tavern & Plaintiff's Trademark Rights**

9.   The original Billy Goat Tavern was established in 1934 when Greek immigrant, William "Billy Goat" Sianis, purchased the Lincoln Tavern for $205.  The tavern was originally located at 1855 W. Madison St., Chicago, IL 60612 across from the Chicago Stadium (now United Center).

10.  Sianis became known as "Billy Goat," when a goat fell off a passing truck and wandered inside the tavern. Sianis adopted the goat, grew a goatee, acquired the nickname "Billy Goat," and forever changed the name of the restaurant and bar to Billy Goat Tavern.

11. The Billy Goat Tavern gained greater notoriety in 1945 when Sianis was refused entrance to Wrigley Field for game four of the 1945 World Series against the Detroit Tigers because he insisted that his pet goat, Murphy, attend the game under his second ticket. According to the legend, Sianis was upset when his goat was denied admission to the stadium and exclaimed, "The Cubs ain't gonna win no more. The Cubs will never win a World Series so long as the goat is not allowed in Wrigley Field." The Chicago Cubs ultimately lost to the Detroit Tigers and did not win another World Series until 2016—becoming famously known as the Curse of the Billy Goat.

12. The Billy Goat Tavern was forever immortalized in pop culture by the 1978 Saturday Night Live sketch starring John Belushi, Bill Murray and Dan Aykroyd. Chicago native, Don Novello, wrote the sketch while he was an advertising copyrighter in Chicago—focusing heavily on three phrases commonly shouted at customers at the Billy Goat Tavern: "Cheezborger, Cheezborger, Cheezborger!"; "No Pepsi…Coke!" (reversed for the SNL sketch); and, of course, "No fries…CHEEPS!"

13. Since 1934, Plaintiff has continuously sold three staples in connection with the BILLY GOAT Mark: (i) cheeseburgers; (ii) beer; and (iii) potato chips.

14. In 1964, the Billy Goat Tavern moved to its present and most-famously known subterranean location at 430 N. Michigan Ave., Chicago, Illinois 60611.

15. Plaintiff has since then expanded its business by opening additional Billy Goat Tavern locations in the Chicago, Illinois area: Washington Street (Loop), Wells Street (South Loop), Madison Avenue (United Center), Navy Pier, and O'Hare International Airport.

16. Plaintiff also opened a Billy Goat Tavern in Washington D.C.—located at 500 New Jersey Ave. NW #1, Washington, DC 20001-2005—in October 2005.

17.  In addition to its tavern and restaurant services, Plaintiff offers its frozen beef patties and family-recipe beers at Jewel-Osco stores throughout the state of Illinois, as shown below. Similarly, Plaintiff intends to begin selling its iconic potato chips at retail locations shortly.

Plaintiff's Frozen BILLY GOAT Burgers          Plaintiffs BILLY GOAT IPA

 

18. In 1982, Sam A. Sianis d.b.a. Billy Goat Inn registered the BILLY GOAT Mark with the United States Patent and Trademark Office in connection with Tavern and Restaurant Services—Registration No. 1,197,507—listing a date of first use as early as 1934. *See* Exhibit 1.

19. On October 20, 2015, Sam A. Sianis assigned to Plaintiff all right, title and interest in and to U.S. Trademark Registration No. 1,197,507, as well as all common law trademark rights in and to the BILLY GOAT Mark, for use in connection with tavern and restaurant services, together with the goodwill of the business connected with and symbolized by the BILLY GOAT Mark. *See* Exhibit 2.

20.  Since 1934, through itself and its predecessors, Plaintiff has spent substantial resources and time marketing its business under the BILLY GOAT Mark, leading non-solicited third-parties to describe the Billy Goat Tavern as "one of Chicago's most famous legends in the restaurant industry" (https://www.thrillist.com/eat/chicago/chicago-history-burger-restauraunts-timeline-drexels-pure-food-white-castle-kumas-corner) and stating there are "Few

restaurants…as famous, or as infamous, as Chicago's Billy Goat Tavern."
(https://chicago.thelocaltourist.com/billygoattavern).

21. To this day, Plaintiff's Billy Goat Tavern locations are frequented by celebrities, sports figures, and, of course, Saturday Night Live stars, including, Bill Murray, Andy Samberg, and Will Ferrell.

## II. Defendant's History and its Infringing Conduct



22. In 2009, two St. Louis, Missouri individuals—Rob Lyons and Brian Roth—started selling potato chips under the name THE BILLY GOAT CHIP COMPANY, as shown to the right.

23. On March 30, 2010, nearly thirty years after Plaintiff had obtained its trademark registration in the BILLY GOAT Mark, Defendant registered the mark THE BILLY GOAT CHIP COMPANY with the United States Patent and Trademark Office—Registration No. 3,766,997—in connection with potato chips. The registration disclaimed all rights to the phrase "Chip Company."

24. Defendant's initial sales of THE BILLY GOAT CHIP COMPANY potato chips, on information and belief, were limited to the immediate St. Louis, Missouri area.

25. As shown by Defendant's own website, and as depicted below, Defendant's potato chips are still sold primarily in the St. Louis market—at approximately one-hundred and two (102) locations. However, the company has recently begun to expand beyond the St. Louis area and now offers its THE BILLY GOAT CHIP COMPANY potato chips at three (3) different locations in the Chicago, Illinois area.

6



26. Defendant's THE BILLY GOAT CHIP COMPANY potato chips are sold at 543 N. Wabash Ave., Chicago, IL 60611—approximately 1/3 of a mile from Plaintiff's most famous location at 430 N. Michigan Ave., Chicago, Illinois 60611, as shown below:



27. Defendant's THE BILLY GOAT CHIP COMPANY potato chips are also sold in Washington D.C. at 475 H St. NW, Washington, DC 20001—approximately half a mile from Plaintiff's Washington D.C. location, as shown below:



28. To this day, Defendant continues to sell THE BILLY GOAT CHIP COMPANY potato

chips, and other products under THE BILLY GOAT CHIP COMPANY trademark, through retail

locations across the United States and online at its website https://www.billygoatstl.com/.

29. Defendant did not seek Plaintiff's consent or permission to use the name "Billy Goat" as

a trademark, nor has any consent or permission ever been given.

### III.  Continued Increase in Actual Confusion and Plaintiff's Unsuccessful Efforts to Stop Defendant's Infringing Conduct

30. After Defendant entered into the Chicago, Illinois and Washington D.C. markets,

Plaintiff began experiencing instances of confusion among consumers as to whether Defendant's

THE BILLY GOAT CHIP COMPANY potato chips were affiliated with or sponsored by

Plaintiff, which they are not. For example, numerous customers have come to Plaintiff's

locations mistakenly stating that they had purchased Plaintiff's chips at various retail locations,

when in reality they had purchased Defendant's chips.

31. Unfortunately, the confusion caused by Defendant's use of THE BILLY GOAT CHIP

COMPANY mark has not stopped—it has only grown worse. As Defendant's presence and sales

in the Chicago, Illinois and Washington D.C. markets have increased, so too have the instances

of confusion experienced by Plaintiff.

32. This confusion is understandable. By operating in the heart of downtown since 1934—aided by the Saturday Night Live sketch in 1978 and the Chicago Cubs' Curse of the Billy Goat from 1945 to 2016—the Billy Goat Tavern has become a part of Chicago's history and is immediately recognizable by people throughout the country, similar to other iconic Chicago landmarks such as Wrigley Field, the Old Chicago Water Tower, and Uno Pizzeria.

33. Defendant's use of THE BILLY GOAT CHIP COMPANY mark has also impacted Plaintiff's ability to license the BILLY GOAT Mark to third-party chip companies due to their mistaken belief that Plaintiff is affiliated with Defendant, and therefore is already offering chips in connection with the BILLY GOAT Mark, or their unwillingness to sell a product that already has a direct competitor with a substantially similar mark.

34. Plaintiff has reached out to Defendant—objecting to its use of THE BILLY GOAT CHIP COMPANY mark and requesting that Defendant cease all use of the mark. Plaintiff has repeatedly attempted to resolve Defendant's infringement amicably, but Defendant has refused to acknowledge or agree to Plaintiff's demands.

35. Defendant's use of THE BILLY GOAT CHIP COMPANY mark infringes on Plaintiff's BILLY GOAT Mark.

36. Defendant's conduct constitutes intentional and knowing infringement of the BILLY GOAT Mark.

37. Plaintiff has no adequate remedy at law.

38. The goodwill of Plaintiff's nearly 85-year-old BILLY GOAT Mark is being harmed by Defendant, and an increasing number of customers are becoming confused as a result of Defendant's infringing use of THE BILLY GOAT CHIP COMPANY trademark.

39. Because the instances of consumer confusion continues to increase, and will only continue to increase as Defendant's presence in the Chicago, Illinois and Washington D.C. markets continues to grow, injunctive relief is required to protect the goodwill that Plaintiff has established in its BILLY GOAT Mark since 1934 and to protect consumers from continued confusion.

**COUNT I**
**TRADEMARK INFRINGEMENT – 15 U.S.C. § 1114**

40. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 39 as though fully stated herein.

41. Section 1114 of the Lanham Act precludes the use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any good or services on or in connection with which such use is likely to cause confusion, or cause mistake, or to deceive consumers.

42. Plaintiff is the sole and exclusive owner of the BILLY GOAT Mark (Registration No. 1,197,507). The BILLY GOAT Mark is a valid and subsisting trademark which is in full force and effect. Pursuant to 15 U.S.C. § 1057(b) and 15 U.S.C. § 1065, the registration serves as prima facie evidence of the mark's validity and Plaintiff's right to use such mark in connection with its goods and/or services. Furthermore, the BILLY GOAT Mark is incontestable pursuant to 15 U.S.C. § 1065.

43. Defendant's unauthorized use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips, and related goods, is likely to cause, and already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services—depriving Plaintiff of the goodwill established in its BILLY GOAT Mark.

10

44. On information and belief, Defendant deliberately adopted and/or is using THE BILLY GOAT CHIP COMPANY mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by Plaintiff since 1934.

45. Defendant's use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips, and related goods, has caused and, unless retrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

46. Defendant's willful and continued use of THE BILLY GOAT CHIP COMPANY mark after multiple requests by Plaintiff to cease all use of the mark makes this case an exceptional case for which an award of Plaintiff's reasonable attorneys' fees and costs are warranted.

## COUNT II
## UNFAIR COMPETITION - 15 U.S.C. § 1125

47. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 46 as though fully stated herein.

48. Section 1125(a) of the Lanham Act precludes use in commerce of any word, term, or name likely to cause confusion as to the affiliation, connection or association as to the origin or sponsorship of goods or services by another person.

49. Through extensive and continuous use of its BILLY GOAT Mark since as early as 1934 and Plaintiff's registration of the mark (Registration No. 1,197,507) in 1982, Plaintiff has established trademark rights in its BILLY GOAT Mark.

50. Defendant's unauthorized use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips, and related goods, is likely to cause, and already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation,

sponsorship or authenticity of the parties' goods and/or services—depriving Plaintiff of the goodwill established in its BILLY GOAT Mark.

51. On information and belief, Defendant deliberately adopted and/or is using THE BILLY GOAT CHIP COMPANY mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by Plaintiff since 1934.

52. Defendant's use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips has caused and, unless retrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

53. Defendant's willful and continued use of THE BILLY GOAT CHIP COMPANY mark after multiple requests by Plaintiff to cease all use of the mark makes this case an exceptional case for which an award of Plaintiff's reasonable attorneys' fees and costs are warranted.

**COUNT III**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICE ACT – 815 ILCS 510**

54. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 53 as though fully stated herein.

55. Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act provides in relevant part:

> A person engages in a deceptive trade practice when, in the course of his or her business…the person:
>
> (1) passes off goods or services of those of another;
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (3) causes likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by another,…or
> (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

12

815 ILCS 510/2.

56. Defendant's unauthorized use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips, and related goods, is likely to cause, and already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services—depriving Plaintiff of the goodwill established in its BILLY GOAT Mark. Therefore, Defendant has used deceptive acts or practices as described in Section 2 of the Uniform Deceptive Trade Practices Act.

57. On information and belief, Defendant deliberately adopted and/or is using THE BILLY GOAT CHIP COMPANY mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by Plaintiff since 1934.

58. Defendant's use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips has caused and, unless retrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT IV
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

59. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 58 as though fully stated herein.

60. Section 505/2 of the Illinois Consumer Fraud and Deception Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to…the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person in fact has been misled, deceived or damaged thereby.

815 ILCS 505/2.

61. Defendant's unauthorized use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips, and related goods, is likely to cause, and already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation, sponsorship or authenticity of the parties' goods and/or services—depriving Plaintiff of the goodwill established in its BILLY GOAT Mark. Therefore, Defendant has used deceptive acts or practices as described in Section 2 of the Uniform Deceptive Trade Practices Act.

62. On information and belief, Defendant deliberately adopted and/or is using THE BILLY GOAT CHIP COMPANY mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by Plaintiff since 1934.

63. Defendant's use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips has caused and, unless retrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**

64. Plaintiff incorporates herein by reference the allegations of paragraphs 1 through 63 as though fully stated herein.

65. Through extensive and continuous use of its BILLY GOAT Mark since as early as 1934, Plaintiff has established trademark rights in its BILLY GOAT Mark.

66. Defendant's unauthorized use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips, and related goods, is likely to cause, and already has caused, confusion, mistake, or deception among consumers as to the source, quality, affiliation,

14

sponsorship or authenticity of the parties' goods and/or services—depriving Plaintiff of the goodwill established in its BILLY GOAT Mark.

67. On information and belief, Defendant deliberately adopted and/or is using THE BILLY GOAT CHIP COMPANY mark with a bad faith intent to cause consumer confusion and/or trade on the goodwill established by Plaintiff since 1934.

68. Defendant's use of THE BILLY GOAT CHIP COMPANY mark in connection with its sale of potato chips has caused and, unless retrained and enjoined, will continue to cause consumer confusion and irreparable harm, damage and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant as follows:

a) Preliminary and permanently enjoining Defendant's use of the phrase "Billy Goat" as a name, trade mark, or service mark in connection with food and/or beverage sales;

b) Awarding Plaintiff its attorneys' fees and costs; and

c) Ordering or awarding Plaintiff any such other relief that the Court deems just and proper under the circumstances.

### Demand For Jury Trial

Plaintiff demands a trial by jury on all issues so triable.

Dated:  December 20, 2017           Respectfully submitted,

           By: */s/ Michael A. Parks*
           Michael A. Parks. IL 6217230
           Justin Powers Mulligan, IL 6319388
           THOMPSON COBURN LLP
           55 E. Monroe Street, 37th Floor
           Chicago, IL 60603
           P: (312) 346-7500
           F: (312) 580-2201
           mparks@thompsoncoburn.com
           jmulligan@thompsoncoburn.com