IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BILLY GOAT IP LLC,

   Plaintiff,

 v.

THE BILLY GOAT CHIP COMPANY LLC,

   Defendant.

Hon. Robert M. Dow, Jr.

Case No. 17-CV-9154

## **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

 Plaintiff's complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because it unreasonably delayed bringing this suit nearly a decade after having constructive notice of Defendant's use of its mark (in 2010), and almost four years after actually engaging in (in 2014)—but later abandoning—discussions with Defendant. In a telling example, Plaintiff highlights in its complaint sales of Defendant's potato chips at Eataly near Plaintiff's Michigan avenue location, but fails to tell the whole story: Billy Goat Chips have been sold at Eataly since 2014. If Billy Goat potato chips are such a threat, why did Plaintiff wait so long?

 Defendant, The Billy Goat Chip Company LLC ("Billy Goat Chip"), is the exclusive owner of the right to sell chips under its name. That right stems not only from Billy Goat Chip's roots in the "Billy Goat Hill" area of St. Louis, but from the federally registered and incontestable trademark registrations Billy Goat Chip owns for the very products it sells. Billy Goat Chip applied for the federal trademark of which Billy Goat Tavern complains—"The Billy Goat Chip Company"—in 2009, and has been using it since that time. That mark was published in 2010 to give anyone who wanted to oppose it an opportunity to do so, and no one did. Billy Goat won the trademark in March 2010 and it became incontestable in 2016. There is no doubt

that Billy Goat has the nationwide right to sell its products covered by the goods and services described in its application under its federal trademark.

Plaintiff Billy Goat IP LLC ("Billy Goat Tavern") has had constructive notice of Billy Goat Chip's nationwide exclusive right to use its marks in connection with its business since 2010. Billy Goat Tavern has had actual notice of Billy Goat Chips use of it marks in Chicago since at least 2014 when it began a later-abandoned series of letters back and forth between lawyers. Billy Goat eventually stopped responding to those letters and never opposed Billy Goat Chip's mark in the Trademark Office or in court. Now after years of unexplained silence, Billy Goat filed this lawsuit making the same arguments of infringement it did years ago without offering any explanation to Billy Goat Chip or this Court as to why it slept on its purported rights and ignored attempts at resolution by Billy Goat Chip.

## Facts

### History of Billy Goat Chip

The Billy Goat Chip Company's flagship potato chip was originally created 15 years ago by Chef Brian Roth to serve as a house-made side with sandwiches at his restaurant, The Billy Goat Restaurant & Bar, a gastro pub located in an area of St. Louis known as Billy Goat Hill. Ex. A to Complaint, Declaration of Brian Roth. The restaurant opened in 2002 and enjoyed great reviews. *Id*. Roth and his co-owner sold the restaurant six years later. *Id.* Based on popularity of the restaurant's house-made chips, they decided to focus exclusively on producing artisan-made, gourmet potato chips. *Id.*

Billy Goat Chip was founded in 2009. The company makes gourmet chips from hand-selected Idaho russet potatoes with hand-cooked seasonings that are packaged and delivered fresh. *Id*. Since its founding, Billy Goat Chips have been served at restaurants, entertainment

venues, schools, fundraising events, and have been available for purchase through supermarkets, small grocers and gourmet food stores, as well as online. *Id*.

Billy Goat Chip began selling into the Illinois and Chicago markets almost immediately after its founding. Products have been sold including the Billy Goat Chip Company name and logo in the Chicago market since at least 2011 and in Illinois since 2010.. *Id*. Based on little more than word of mouth, Billy Goat Chips quickly spread throughout the Chicago market: Billy Goat has been selling chips to Whole Foods in Lincoln Park, Sauganash, Naperville, and Northbrook, since 2013, and Halstead, South Loop, Whole Foods locations since 2014. *Id*. Billy Goat Chips have been likewise available at Binny's Beverage Depots in the West Loop, Lincoln Park, Lakeview, and Gold Coast since 2014. *Id*. Likewise they have been available since 2014 at the City Fresh Market in Ogilvie Transportation Center. *Id*. In fact, sales at the Eataly location mentioned in paragraph 26 of Billy Goat Tavern's complaint have been ongoing since 2014. *Id*. These are only examples of Chicago sales. Nationwide sales have been extensive as well, including Atlanta since 2012, Colorado since 2012, Idaho since 2011, and others. *Id*.

### Billy Goat Chip's Federal Trademark Registration

Near the time of its founding, Billy Goat Chip filed for federal trademark protection to secure the exclusive right to use its name, The Billy Goat Chip Company, in connection with its core business. *See* Ex. B. That mark was published for opposition in 2010, and receiving no opposition whatsoever, was registered on the primary U.S. Trademark register in March 2010, receiving registration no. 3766997. Billy Goat Chip filed for incontestable status in 2016.

### History With Billy Goat Tavern and Billy Goat Chip

Billy Goat chip first heard from Billy Goat Tavern in late 2014. In September, 2014, Defendant received a letter from the law firm Niro, Haller & Niro representing Plaintiff and

claiming to have sent an earlier letter in August 2014. Ex. C. Defendant responded requesting a copy of the missing August 2014 letter which the Niro firm forwarded in October, 2014.

In November, 2014, Defendants responded (Ex. D) through counsel pointing out that there is no possibility of confusion between Defendant's business and Plaintiff's. Defendant's business, as numerous publications point out, is named after its hometown roots in the Billy Goat Hill area of St. Louis. Defendant's logo and marketing in fact emphasizes "St. Louis, Missouri" in its design and marketing. Additionally, then as now, numerous other businesses were and are using "Billy Goat;" including numerous other food service establishments like the Billy Goat Coffee Café, Billy Goat Hill Estate, and others.

In March, 2015 (Ex. E) Plaintiff's new firm wrote to Defendant saying very little other than that it was "disappointed," but failed to address any points raised in the November 2014 letter—in fact it was unclear if counsel had that letter so Defendant's counsel forwarded it the same day. (Ex. F). Plaintiff again wrote back requesting a "middle ground." (Ex. G).

In July, 2015 (Ex. H), Defendant wrote to Plaintiff proposing a resolution: Defendant would continue to designate that the origin of the goods is from "Saint Louis, Missouri" in marketing and branding its potato chips within the state of Illinois for a period of 3 years. Yet despite all Plaintiff's entreaties for a "middle ground," and its false claims in this lawsuit (see Complaint, ¶34), it never responded to this proposal.

Plaintiff switched law firms again, and in September 18, 2015 counsel for Billy Goat Chip forwarded all correspondence to the new firm. Still, there was no response to Defendant's proposal until this lawsuit was filed over two years later.

## ARGUMENT

**I. Plaintiff's Federal Lanham Act Claims are Barred Under The Doctrine of Laches**

A plaintiff's complaint must be dismissed pursuant to Rule 12(b)(6) if it fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007); Fed. R. Civ. P. 12(b)(6). A claim is plausible on its face only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Even a complaint that otherwise states a claim may be dismissed under Rule 12(b)(6) when a plaintiff "admits all the ingredients of an impenetrable defense." *See e.g. Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (collecting cases). Although a plaintiff "need not anticipate and attempt to plead around all potential defenses," he can "pleads himself out of court" by establishing through facts in the pleading that he has no legal claim. *Id.*; *see also Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (collecting cases) (noting that this rule antedates *Twombly* and *Iqbal*). In this case, the equitable defense of laches applies and its applicability is evident from the pleadings.

The equitable doctrine of laches exists to protect parties from actions brought only after unreasonable delay. The Seventh Circuit has long held that, while "[l]aches does not necessarily constitute a conclusive and automatic bar to injunctive relief in trademark actions," it may be invoked when the delay is sufficiently long "that it would be inequitable to permit the plaintiff to seek injunctive relief as to future activities." *Seven-Up Co. v. O-So-Grape Co. Et Al*, 283 F.2d 103, 106 (7th Cir. 1960); *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016) (quoting *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997) (describing the doctrine of laches as the remedy "by which equity comes to the aid of an innocent user and grants him refuge from a claimant who has calmly folded his hands and remained silent while the innocent user has exploited and strengthened the mark").

To prove a defense of laches, "the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark[,] that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-793 (7th Cir. 2002) (collecting cases). In evaluating whether a plaintiff's delay was unreasonable, courts look beyond the mere passage of time to "[w]hether the defendant has been lulled into a false sense of security or had acted in reliance on the plaintiff's delay." *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (internal quotations omitted). Prejudice to defendants is evaluated as a matter of degree; thus, "if only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir. 1999) (quoting *Zelazny v. Lyng*, 853 F.2d 540, 543 (7th Cir. 1988)).

In this case, the period of Plaintiff's delay was sufficiently long, given the significant prejudice to Defendant, to warrant applying laches. Not only does this equitable defense apply, but the pleadings illustrate there is no factual dispute as to the underlying delay, precluding Plaintiff from "nudg[ing its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 548; *Iqbal*, 556 U.S. 662, 678 (A complaint must be dismissed when it "stops short of the line between possibility and plausibility of entitlement to relief."). Therefore, Plaintiff's complaint must be dismissed.

### A. Plaintiff Had Constructive Knowledge of Defendant's Use of the Mark in 2010 and Actual Notice at Least as of 2014

In determining whether a plaintiff has knowledge of a defendant's use of a particular mark, "a plaintiff [may] have actual *or constructive* notice of the defendant's activities.

*Chattanoga Mfg., Inc.*, 301 F.3d at 793 (collecting cases) (emphasis provided). It is well-settled in determining the applicability of laches that "the plaintiff is chargeable with such knowledge as he may have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Id.*; *see also Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103 (7th Cir. 1970) ("Plaintiff is chargeable with the information it might have received had due inquiry been made.").

To begin, Defendant successfully registered its trademark in 2010. Registration itself "serves as 'constructive notice of the registrant's claim of ownership' of the mark." *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1300 (2015) (quoting 15 USCS §1072). Federal trademark registration also extends constructive notice of the registrant's ownership nationwide, precluding any argument that a party may not be on notice due to geography. *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 603 (7th Cir. 2008) (citing 15 USCS § 1057(c)) ("Under U.S. law, these registrations constitute conclusive evidence of [a party]'s exclusive rights to the underlying marks for the uses specified in the registrations, . . . and they also provide nationwide constructive notice of [a party]'s rights to the underlying marks, dating back to the filing dates of the applications from which the registrations matured."). Because Defendant registered "The Billy Goat Chip Company" with the United States Patent and Trademark Office in March 2010, that is the date on which Plaintiff had knowledge, via constructive notice, of Defendant's use of the mark. Furthermore, Plaintiff acknowledges this point in its complaint. Complaint, ¶ 23.

Additionally, as noted above, Plaintiff was indisputably on notice of Defendant's use of its marks in the Chicago market in 2014 when it wrote to Defendant.

### B. <u>Plaintiff Unreasonably Delayed Action Seeking a Remedy for the Alleged Infringement.</u>

Even though it abandoned settlement negotiations years ago, Plaintiff now claims irreparable harm and seeks injunctive relief from this Court. Nearly eight years have passed since Plaintiff could and should have learned of Defendant's use of "The Billy Goat Chip Company," thereby giving it constructive notice; more than three years have passed since Plaintiff absolutely had actual notice of Defendant's use of the mark; and more than two years have passed since Plaintiff abandoned ongoing settlement negotiations related to this matter. This unreasonable action by Plaintiffs allows Defendant to invoke laches based on the length of time elapsed alone. *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 2d 1075, 1080 (N.D. Ill. 2001) (holding that a claim filed after a 5-6 year delay was time barred by laches). In the Seventh Circuit, courts have consistently "referred to analogous state statutes of limitations to determine whether a presumption of laches should apply." *Hot Wax*, 191 F.3d at 820-821 (7th Cir. 1999). In Illinois, the most analogous period is "the three-year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act." *Chattanoga Mfg., Inc.*, 301 F.3d at 793; *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 916 (N.D. Ill. 2007); *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1037 (N.D. Ill. 2013) (noting that there is also a three year statute of limitations period for Illinois Uniform Deceptive Trade Practices Act claims); *RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 672 (N.D. Ill. 2016) (noting nonetheless that, "[f]iling with six months to go on the statute of limitations does not, without anything more, constitute inexcusable delay"). Even construing all of the available facts in favor of the non-moving party, as the Court must on a motion to dismiss, Plaintiff has not filed this case within the relevant three-year statute of limitations. This leads to a presumption that Plaintiffs delay was unreasonable.

Although "whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case," (*Hot Wax*, 191 F.3d at 821-22), in this case, not only has Plaintiff delayed an unreasonable amount of time, but it has also lulled Defendant into a false sense of security by apparently dropping its allegations of infringement against Defendant. *Ty, Inc.*, 237 F.3d at 903 (7th Cir. 2001); *see also In re Aimster Copyright Litig.*, 252 F. Supp. 2d 634, 662 (N.D. Ill. 2002) ("In assessing the excusability of delay in seeking a preliminary injunction, the relevant issue is whether a defendant has been lulled into a false sense of security or had acted in reliance on the plaintiff's delay."). By first initiating, then abandoning ongoing settlement negotiations and leaving the issue dormant for over two years, Plaintiff lead Defendant to believe that it no longer wished to pursue the infringement claim. Because Plaintiff waited an unreasonable period of time and, through its actions during the delay, led Defendant to believe it was not infringing, Plaintiff's delay is inexcusable.

Plaintiff may argue that merely initiating settlement negotiations proves that it was not sleeping on its rights. But the Seventh Circuit has rejected this reasoning in similar circumstances, holding that a "sparse letter writing campaign can hardly be characterized as a serious attempt to resolve" a party's concerns about trademark infringement. *Hot Wax,* 191 F.3d at 823-824 (specifically indicating that sending five letters over two years, without more, was insufficient to excuse the party's "otherwise unreasonable delay").

In these circumstances, Plaintiff's delay was inexcusable and to allow it to assert its claim now "would work injustice." *Seven-Up Co.*, 283 F.2d at 106 (citing *Boris v. Hamilton Mfg. Co.*, 253 F.2d 526, 529 (7th Cir. 1958)).

### C. <u>Allowing Plaintiff to pursue injunctive relief at this time prejudices Defendant.</u>

A delay becomes prejudicial when "a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Chattanoga Mfg., Inc.*, 301 F.3d at 795. Here, Plaintiff abruptly abandoned discussions it initiated with Defendant, leading Defendant to continue to expand its footprint both in Illinois and nationally—only to later have Plaintiff reawaken its interest in asserting trademark infringement.

Beyond the prejudice inferred from Defendant's substantial creative and financial outlays, prejudice is also presumed "where the delay is so prolonged and inexcusable that it amounts to a virtual abandonment of the right by the plaintiff for a long period of time." *Tisch Hotels v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965); *American Airlines, Inc. v. A 1-800-A-M-E-R-I-C-A-N Corp.*, 622 F. Supp. 673, 685 (N.D. Ill. 1985). In these circumstances, the balance of the equities favors the accused infringer. *Id.* Falling silent in the midst of settlement negotiations and failing to raise the issue again for over two years constitutes "virtual abandonment" of the right by Plaintiff.

By any measure, Defendant would surely be prejudiced by Plaintiff's unexplained delay.

## II. <u>Plaintiff's Illinois State Law Claims are Also Barred.</u>

As discussed above, Plaintiff's state law claims should be dismissed because they were brought outside of their respective statutes of limitations. 815 ILCS 505/10a ("Any action for damages under this Section shall be forever barred unless commenced within 3 years after the cause of action accrued."); *McCready v. Ill. Secy. of State*, 382 Ill. App. 3d 789, 798 (Ill. App. Ct. 2008) (citing *Elrad v. United Life and Accident Insurance Co.*, 624 F. Supp. 742, 745 (N.D. Ill. 1985)) (holding that the three year statute of limitations under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505) "also applies to claims under the Uniform Deceptive Trade Practices Act"). The most recent date on which the cause of action could have

possibly accrued is the date on which Plaintiff sent its first communication to Defendant: August 29, 2014. As this action was not filed until December 20, 2017, the statute of limitations on Plaintiff's state law claims has clearly expired.

Because Plaintiff's state law claims seek equitable relief as well, the equitable defense of laches also applies with equal force to those claims.

### III. In the Unlikely Event That the Complaint Survives Dismissal, Damages Beyond the Three Year Statute of Limitations Is Time Barred

While the Complaint is fashioned as only a complaint for "injunctive relief", the Complaint's prayer for relief requests an order or award of "any such other relief that the Court deems just and proper." The applicable three (3) year statute of limitations is a bar to monetary relief for the period outside the statute of limitations. *E.g., id.*; *Hot Wax, Inc.*, 191 F.3d at 821-22; 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.33 (4th ed. 2001) ("the statute of limitations is no bar except as to damages beyond the statutory period."); *Ediciones Quiroga S.L. v. Fall River Music, Inc.*, 1995 U.S. Dist. LEXIS 2641, 1995 WL 103842, at *8 (S.D.N.Y. Mar. 7, 1995); *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 296 (E.D.N.Y 2004)(" while a claim for unfair competition is not time-barred, damages are limited to the three-year period before the action was commenced"). Accordingly, to the extent it is alleged, any claims for damages beyond the three (3) statute of limitations period is time barred.

## Conclusion

For the reasons set forth above Defendant respectfully requests that this court dismiss all counts against it as barred by the equitable doctrine of laches. Moreover, in the event the complaint is not dismissed in its entirety, to the extent damages are alleged, the court should rule that any claims for damages beyond the three (3) statute of limitations period is time barred.


Dated: February 16, 2018

        Respectfully submitted,

        LATHROP GAGE LLP


        By: */s/Timothy Sendek*
            Timothy K. Sendek #6293755
            155 N. Wacker Drive, Suite 3000
            Chicago, IL 60606
            T: (312) 920-3300
            F: (312) 920-3301
            TSendek@LathropGage.com

            Bryan P. Sugar
            LEWIS BRISBOIS
            550 W. Adams Street, Suite 300
            Chicago, IL 60661
            T: (312) 463-3473
            F: (312) 345-1778
            Bryan.Sugar@lewisbrisbois.com

            **Attorneys for Defendant**
            **THE BILLY GOAT CHIP COMPANY LLC**