**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BILLY GOAT IP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-9154 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| THE BILLY GOAT CHIP | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Billy Goat IP LLC ("Plaintiff") brings suit against Defendant the Billy Goat Chip Company LLC ("Defendant") for federal trademark infringement and unfair competition, violation of Illinois' Uniform Deceptive Trade Practices Act and Consumer Fraud and Deceptive Business Practices Act, and common law trademark infringement, arising out of Defendant's use of the phrase "Billy Goat" in connection with food and beverage sales. Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim [17]. For the reasons explained below, Defendant's motion [17] is denied. This case is set for status hearing on August 22, 2018 at 9:00 a.m.

I. **Background[1]**

The original Billy Goat Tavern was established by William "Billy Goat" Sianis in 1934 at 1855 W. Madison Street in Chicago, across for the Chicago Stadium (now the United Center). The Billy Goat Tavern gained notoriety in 1945 when Sianis was refused entrance to Wrigley Field for game four of the 1945 World Series against the Detroit Tigers because he insisted that

---

[1] For purposes of Defendant's motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's complaint. See [1]; *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

his pet goat, Murphy, attend the game under his second ticket.  According to the legend, Sianis was upset when his goat was denied admission to the stadium and exclaimed, "The Cubs ain't gonna win no more. The Cubs will never win a World Series so long as the goat is not allowed in Wrigley Field."  [1] at 4.  This became known at the "Curse of the Billy Goat."  The Cubs lost to the Tigers and did not win another World Series until 2016.  The Billy Goat Tavern was immortalized in pop culture by the 1978 Saturday Night Live sketch starring John Belushi, Bill Murray and Dan Aykroyd, which used three phrases commonly shouted at customers at the Billy Goat Tavern: "Cheezborger, Cheezborger, Cheezborger!"; "No Pepsi…Coke!" (reversed for the SNL sketch); and, "No fries…CHEEPS!"  [1] at 4.

Since 1934, Plaintiff has continuously sold three staples in connection with the BILLY GOAT Mark: cheeseburgers, beer, and potato chips.  In 1964, the Billy Goat Tavern moved to its present and most famous location at 430 N. Michigan Avenue in Chicago.  Plaintiff has since then expanded its business by opening additional Billy Goat Tavern locations in the Chicago area: Washington Street (Loop), Wells Street (South Loop), Navy Pier, and O'Hare International Airport.  Plaintiff also opened a Billy Goat Tavern in Washington D.C. in October 2005.

In addition to its tavern and restaurant services, Plaintiff offers its frozen beef patties and family-recipe beers at Jewel-Osco stores throughout the state of Illinois.  Plaintiff intends to begin selling its iconic potato chips at retail locations in the near future.

In 1982, Sam A. Sianis d.b.a. Billy Goat Inn registered the BILLY GOAT Mark with the United States Patent and Trademark Office in connection with Tavern and Restaurant Services— Registration No. 1,197,507.  On October 20, 2015, Sam A. Sianis assigned to Plaintiff (a Delaware corporation with its principal place of business in Chicago) all right, title and interest in and to U.S. Trademark Registration No. 1,197,507, as well as all common law trademark

rights in and to the BILLY GOAT Mark, for use in connection with tavern and restaurant services, together with the goodwill of the business connected with and symbolized by the BILLY GOAT Mark. Since 1934, through itself and its predecessors, Plaintiff has spent substantial resources and time marketing its business under the BILLY GOAT Mark.

In 2009, two individuals from St. Louis, Missouri, Rob Lyons and Brian Roth, started selling potato chips under the name THE BILLY GOAT CHIP COMPANY. On March 30, 2010, Defendant (a Missouri limited liability company with its principal place of business in St. Louis) registered the mark THE BILLY GOAT CHIP COMPANY with the United States Patent and Trademark Office—Registration No. 3,766,997—in connection with potato chips. The registration disclaimed all rights to the phrase "Chip Company."

Defendant's initial sales of THE BILLY GOAT CHIP COMPANY potato chips, on information and belief, were limited to the immediate St. Louis, Missouri area. Defendant's potato chips are still sold primarily in the St. Louis market, at approximately 100 locations. However, the company has recently begun to expand beyond the St. Louis area and now offers its THE BILLY GOAT CHIP COMPANY potato chips at three locations in the Chicago area. One of those locations, 543 N. Wabash Ave., is 1/3 of a mile from Plaintiff's most famous location at 430 N. Michigan Ave. Defendant's THE BILLY GOAT CHIP COMPANY potato chips are also sold in Washington D.C. at 475 H St. NW—approximately half a mile from Plaintiff's Washington D.C. location. To this day, Defendant continues to sell THE BILLY GOAT CHIP COMPANY potato chips, and other products under THE BILLY GOAT CHIP COMPANY trademark, through retail locations across the United States and online at its website. Defendant did not seek Plaintiff's consent or permission to use the name "Billy Goat" as a trademark, nor has any consent or permission ever been given.

After Defendant entered into the Chicago and Washington D.C. markets, Plaintiff began experiencing instances of confusion among consumers as to whether Defendant's THE BILLY GOAT CHIP COMPANY potato chips were affiliated with or sponsored by Plaintiff, which they are not. For example, numerous customers have come to Plaintiff's locations mistakenly stating that they had purchased Plaintiff's chips at various retail locations, when in reality they had purchased Defendant's chips. Plaintiff alleges that the confusion has grown worse as Defendant's presence and sales in Chicago and Washington D.C. have increased. According to Plaintiff, Defendant's use of THE BILLY GOAT CHIP COMPANY mark also has affected Plaintiff's ability to license the BILLY GOAT Mark to third-party chip companies due to their mistaken belief that Plaintiff is affiliated with Defendant, and therefore is already offering chips in connection with the BILLY GOAT Mark, or their unwillingness to sell a product that already has a direct competitor with a substantially similar mark. Plaintiff has reached out to Defendant, objecting to its use of THE BILLY GOAT CHIP COMPANY mark and requesting that Defendant cease all use of the mark. Plaintiff has repeatedly attempted to resolve Defendant's infringement amicably, but Defendant has refused to acknowledge or agree to Plaintiff's demands.

Plaintiff filed suit against Defendant on December 20, 2017. The complaint contains four counts. In Count I, Plaintiff alleges that Defendant has committed trademark infringement in violation of 15 U.S.C. § 1114 through its unauthorized use of THE BILLY GOAT CHIP COMPANY Mark in connection with its sale of potato chips and related goods to deprive Plaintiff of the goodwill established in its BILLY GOAT Mark. In Count II, Plaintiff alleges, based on the same basic facts, that Defendant has engaged in unfair competition in violation of 15 U.S.C. § 1125. In Counts III, for violation of Illinois' Uniform Deceptive Trade Practices Act

4

("UDTPA"), and IV, for violation of Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA"), Plaintiff alleges that Defendant deliberately adopted and used THE BILLY GOAT CHIP COMPANY Mark with the bad faith intent to cause consumer confusion and trade on the goodwill established by Plaintiff. Count V is a claim for common law trademark infringement. Plaintiff seeks injunctive relief only (no damages). See [25] at 15.

Defendant filed an answer to the complaint on February 16, 2018. See [16]. At the same time, Defendant filed a motion to dismiss the complaint for failure to state a claim. See [17]. Defendant argues that Plaintiff's Lanham Act claims are barred by the doctrine of laches and state law claims are barred by their applicable statutes of limitations. After Plaintiff responded to the motion to dismiss, Defendant filed an amended answer. See [31]. In its amended answer, Defendant alleges that it had a series of interactions with Plaintiff beginning in 2014. See *id*. at 6-8. According to Defendant, Plaintiff's attorney sent Plaintiff a letter in September 2014. In November 2014, Defendant's counsel responded that there was no possibility of confusion between the two businesses, and that Defendant's logo and marketing emphasized "St. Louis, Missouri" in its design and marketing. In March 2015, Plaintiff's new law firm wrote Defendant saying that it was "disappointed" but did not address the substance of the November 2014 letter. In July 2015, Defendant wrote Plaintiff proposing a resolution under which it would agree to show the origin of its goods as "Saint Louis, Missouri" for a period of three years. According to Defendant, Plaintiff did not respond. Instead, Plaintiff waited over two years and then filed this lawsuit, using new lawyers.

Plaintiff's amended answer also includes counterclaims for false advertising in violation of 15 U.S.C. § 1125(a)(1) and violations of IUDTPA and ICFA. In its counterclaims, Defendant alleges that since 2009 it has sold and distributed potato chip products at restaurants,

entertainment venues, schools, fundraising events, supermarkets, small grocery and gourmet food stores, as well as online. Defendant alleges that it has sold potato chip products in Illinois since at least 2010 and in the Chicago market since at least 2011. Defendant asserts that its use of the "Billy Goat" mark in connection with packaged retail food/beverage predates Plaintiff's sale of packaged retail food/beverage products, which did not begin until April 2017.

Currently before the Court is Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim.

## II. Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

"Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations" or laches. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009); see also *Johnson-Morris v. Santander Consumer USA, Inc.*, 194 F. Supp. 3d 757, 763 (N.D. Ill. 2016). "A court may only dismiss a claim as untimely under Rule 12(b)(6) if 'it is

clear from the face of the *** complaint that it is hopelessly time-barred.'" *In re Broiler Chicken Antitrust Litigation*, 290 F. Supp. 3d 772, 806 (N.D. Ill. 2017) (quoting *Cancer Found.*, 559 F.3d at 675.

In this case, Defendant filed an answer just prior to filing its motion to dismiss.  See [16], [17].  The Seventh Circuit has recognized that "'[a] motion to dismiss made after the filing of an answer serves the same function as a motion for judgment on the pleadings and may be regarded as one.'"  *Saunders-El v. Rohde*, 778 F.3d 556, 559 (7th Cir. 2015) (quoting *Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115 (7th Cir. 1970)).  Thus, it is "fair game" for a Defendant to attach to the answer documents that are referred to in the complaint "and then move for *** judgment on the pleadings."  *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).  "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Id.* at 727–28; see also *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (same).  "Accordingly, a court may grant a Rule 12(c) motion only where it is clear from the pleadings that the plaintiffs will be unable to maintain their cause of action in light of the facts presented."  *Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1029 (N.D. Ill. 2016).  "[I]f it appears that discovery is necessary to fairly resolve a claim on the merits, then the motion for judgment on the pleadings must be denied."  *Federal Deposit Ins. Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 672 (N.D. Ill. 2017).

### III.    Analysis

#### A.    Lanham Act Claims and Laches

Defendant argues that Plaintiff's Lanham Act claims should be dismissed because they are barred by the doctrine of laches.  Defendant contends that Plaintiff has had constructive notice of Billy Goat Chip's nationwide exclusive right to use its marks in connection with its business since 2010—when its mark was published—and actual notice of Plaintiff's use of its marks in Chicago since at least 2014—when Plaintiff's attorney first contacted Defendant. Defendant contends that, "[b]y first initiating, then abandoning ongoing settlement negotiations and leaving the issue dormant for over two years, Plaintiff led Defendant to believe that it no longer wished to pursue the infringement claim."  [18] at 9.

"Because the Lanham Act does not itself contain an explicit statute of limitations, federal courts refer to analogous state statutes of limitations in applying the corresponding presumption of laches in asserting a Lanham Act claim." *Johnson Controls, Inc. v. Exide Corp*., 152 F. Supp. 2d 1075, 1079 (N.D. Ill. 2001) (citing *Hot Wax, Inc. v. Turtle Wax, Inc*., 191 F.3d 813, 821 (7th Cir. 1999)).  The courts in this circuit have held that the most analogous Illinois limitation period is the three-year-statute of limitations found in ICFA.  See *Chattanoga Mfg., Inc. v. Nike, Inc*., 301 F.3d 789, 793 (7th Cir. 2002); *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 2013 WL 6632741, at *3 (N.D. Ill. Dec. 16, 2013).  However, "whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case." *Hot Wax*, 191 F.3d at 822.  For laches to apply in a trademark infringement case, the defendant must show (1) "that the plaintiff had knowledge"— actual or constructive—"of the defendant's use of an allegedly infringing mark"; (2) "that the plaintiff inexcusably delayed in taking action with respect to the defendant's use"; and (3) "that

the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time."
*Chattanooga Mfg*., 301 F.3d at 792–93 (holding on summary judgment that trademark holder's
14-year delay in assertion of infringement claim against competitor, for use of its "Jordan"
trademark, was unreasonable and therefore laches applied to bar claim); see also *Georgia-Pacific
Consumer Products LP v. Kimberly-Clark Corp*., 749 F. Supp. 2d 787, 804 (N.D. Ill. 2010)
(same).

"[T]he defense of laches generally requires a fact-intensive inquiry" and therefore "is
usually not amenable to being resolved on summary judgment, let alone on a motion to dismiss."
*Flentye v. Kathrein*, 485 F. Supp. 2d 903, 916–17 (N.D. Ill. 2007) (internal quotation marks and
citation omitted).  An equitable defense "requires a qualitative examination of the parties' words
and conduct and an equitable evaluation of the length of the delay and the degree of prejudice to
the defendant if the trademark owner's rights are enforced," which "generally requires a factual
record."  *Hyson USA, Inc. v. Hyson 2U, Ltd*., 821 F.3d 935, 941 (7th Cir. 2016).

In this case, there are too many unknown and disputed facts that preclude judgment on
the pleadings on Defendant's laches defense.  Based solely on the pleadings and attached
documents, it appears that Plaintiff had constructive notice of Billy Goat Chip's mark in 2010
and actual notice of its use of marks in the Chicago market by 2014.  But the Court cannot
determine from the pleadings and exhibits whether Plaintiff's delay in filing suit was inexcusable
or whether Defendant would be prejudiced by allowing Plaintiff to bring its claims now.  See
*Chattanoga*, 301 F.3d at 792–93; compare *Superior Paintless Dent Removal, Inc. v. Superior
Dent Removal, Inc*., 454 F. Supp. 2d 769, 771 (N.D. Ill. 2006) (denying motion to dismiss
infringement claim based on laches where "[t]he face of the complaint does show that, as early
as [four years before filing suit], plaintiff had knowledge of defendant's use of an allegedly

infringing mark, but it does not demonstrate that the delay was inexcusable or that the defendant would be prejudiced by allowing plaintiff to bring its claims now").

In its complaint, Plaintiff does not admit to inexcusable delay or that Defendant has been prejudiced by Plaintiff's delay in filing suits. Instead, Plaintiff contends in response to the motion to dismiss that any delay in suing was excusable because Defendant's entrance into Plaintiff's markets was gradual and it was only recently that many customers began expressing confusion about Defendant's affiliation with Plaintiff. Plaintiff also asserts that its cease and desist letter put Defendant on notice of Plaintiff's rights, preventing Defendant from relying on laches. See *Sarkis'*, 2013 WL 6632741, at *5 (where complaint alleged that defendant received plaintiff's objections to use of trademark and continued to operate restaurant with full knowledge of plaintiff's trademark, "it [was] unclear whether [d]efendant would be able to invoke laches as a defense"). Given these disputes, Defendant is not entitled to judgment on the pleadings based on its amended answer's selective description of the parties' negotiation history.

In addition, Plaintiff alleges that Defendant used its mark with a bad faith intent to cause consumer confusion and trade on Plaintiff's good will. This allegation, which the Court must accept as true for purpose of the motion to dismiss, might also prevent Defendant from invoking laches. See *Hot Wax*, 191 F.3d at 825 ("A party's unclean hands may stand as an obstacle to the application of the doctrine of laches in certain circumstances. The notion of unclean hands working as a bar to the application of laches stems from the belief that an equitable defense, such as laches, cannot be used to reward a party's inequities or to defeat justice."). Finally, "[t]he availability of an equitable defense in Lanham Act cases *** must be considered in light of the consuming public's right to be free from confusion with respect to product marketing and

advertisements." *Id*. at 826. Defendant's motion does not address the public interest aspect of its laches defense.

For these reasons, the Court denies Defendants' motion to dismiss Plaintiff's Lanham Act claims based on laches.

**B.      State Law Claims**

Defendant argues that Plaintiff's consumer fraud and deceptive trade practices claims are barred by their respective three-year statutes of limitations. See *Sarkis'*, 2013 WL 6632741, at *4; *Persis Intern., Inc. v. Burgett, Inc*., 2012 WL 4176877, at *3 (N.D. Ill. Sept. 18, 2012). According to Defendant, the last date of which Plaintiff's claims possibly accrued was the date Plaintiff sent its first communication to Defendant—August 29, 2014. This action was not filed until December 20, 2017, more than three years later. Plaintiff responds that its claims are timely because Defendant's infringement is an ongoing, continuing wrong, and the statute of limitations does not begin to run until the wrong is done. In its reply brief, Defendant does not address the state law claims generally or the continuing wrong argument specifically.

As a general principle, "the statute of limitations does not begin to run on a continuing wrong" like infringement until "the wrong is over and done with." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983); see also *Prestone Products Corporation v. South/Win, Ltd*., 2014 WL 12775693, at *3 (N.D. Ill. Sept. 26, 2014) ("Infringement—whether trademark or patent—is a continuing tort." (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir. 1978)). This "continuing violations doctrine" has been applied to ICFA and UDTPA claims. *Sarkis'*, 2013 WL 6632741, at *4; see also *Blankenship v. Pushpin Holdings, LLC*, 157 F.Supp.3d 788, 795-96 (N.D. Ill. 2016). Plaintiff alleges that Defendant's infringement is

ongoing, and therefore the statute of limitations begins anew each day that Defendant uses the Billy Goat mark. Defendant's motion to dismiss Plaintiff's state law claims is denied.

**IV.    Conclusion**

For these reasons, Defendant's motion to dismiss [17] is denied. This case is set for status hearing on August 22, 2018 at 9:00 a.m.

Dated: August 7, 2018

Robert M. Dow, Jr.
United States District Judge

12